[No. 11228. Department Two. February 6, 1914.]

LAURITZ SJONG, *Respondent*, v. OCCIDENTAL FISH COMPANY, *Appellant*.[1]

APPEAL—REVIEW—PLEADINGS—AMENDMENTS CONSIDERED MADE. In the absence of a claim of surprise, the defendant having presented all its evidence on the real issue, error cannot be predicated on allowing proof of negligent acts outside of the allegations of the complaint, since the appellate court must, under Rem. & Bal. Code, § 1752, consider all amendments made that could have been made.

MASTER AND SERVANT—INJURY TO SERVANT—METHODS OF WORK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of plaintiff, assigned to the duty of keeping a block clear of a hatch combing, in taking hold of both of the lines running into and out of the block, whereby one of his hands was suddenly drawn into the block, is a question for the jury, where he testified that he handled it as directed.

SAME—INJURY TO SERVANT—ACTIONS—INSTRUCTIONS. In an action for injuries to a servant, in which the complaint was general and did not detail the specific acts upon which the plaintiff chiefly relied, it is error to refuse to define what specific acts were necessary to be proved, and to merely instruct that the jury should find for the plaintiff if he was injured by the negligent acts of the defendant as alleged in the complaint and if the material allegations of the complaint were proved by a fair preponderance of the evidence.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 1, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by an employee engaged in unloading a vessel. Reversed.

[1]Reported in 138 Pac. 313.

*Hughes, McMicken, Dovell & Ramsey* and *Otto B. Rupp,* for appellant.

*C. J. Smith and H. E. Foster,* for respondent.

FULLERTON, J.—The respondent recovered against the appellant for personal injuries suffered by him while in the employment of the appellant assisting in the unloading of fish from the hold of a vessel onto a wharf. In his original complaint, the respondent alleged generally that his injury was the "result of inadequate and improper devices and facilities furnished by the defendant [appellant], its officers and servants, for the purpose of unloading said cargo of fish," without specifying the particulars wherein the devices furnished were insufficient. On appearing in the action, the appellant moved the court that the respondent be required to make his complaint more definite and certain in these respects, which motion the court granted. The respondent thereupon filed an amended complaint, in which he set forth that the appliances were defective "in that the same had a block attached through which a bolt protruded so far that the same would catch in the operation thereof, and the block was so crude that the same operated with difficulty, and on account of the inadequate and defective condition of the same, the same caught" the respondent's left hand, cutting off his thumb. The appellant answered the complaint by a general denial of the negligence alleged, and by an affirmative plea of assumption of risk and contributory negligence.

The evidence introduced at the trial showed other specific acts of negligence than the particular act alleged. It was shown that the appliances used to haul the fish from the hold of the vessel consisted of a derrick and line operated by an electric winch. The derrick consisted of a gin pole and boom, which, together with the winch, were located on the dock. The fish were hauled out through the hatchway of the vessel; and either because the vessel was improperly placed alongside the dock, or because the boom pole was too short for

the particular vessel, the block mentioned, when a load was brought up, would catch on the hatch combing and hold until it was loosened by pushing and manipulating the line. The respondent was assigned the duty of keeping the block clear of the hatch combing. The line leading from the boom pole into the hold of the vessel was doubled; that is to say, one end of it was fastened to the end of the boom pole, and the other was passed through the block and carried back through a pulley at the end of the boom pole, from whence it was carried to the winch.

During the progress of the work, while a load of fish was being brought from the hold, the block caught on the hatch combing. The respondent loosened it by taking hold of the wire with both his hands, the one hand upon one side of the block and the other hand upon the other. As the block became loose, the load suddenly started upward, running the block onto the respondent's left hand before he could remove it, cutting off his thumb as before stated.

The cause of the sudden upward starting of the load is explained by the operator of the winch. He testified that the friction brake, which controlled the drum around which the wire was wound, was out of repair, and at certain times would not hold the load stationary when the gear which connected it with the electric power was disconnected; that, on such occasions, he was compelled, in order to prevent the load from falling back into the hold of the vessel, to keep the power connected; that this was a greater strain than was necessary to merely hold the load in place; and consequently, when the block was released, the load immediately commenced to rise.

The foregoing statement is from the respondent's testimony concerning the matters which gave rise to the accident. There is much in the appellant's testimony which tended to show a contrary state of facts. It was testified that the appliances used were the ordinary appliances usually used in such cases; that they were proper and suitable;

that the winch was in perfect repair; and that, if it per-
formed in the manner testified to by the operator, it was
because it was unskillfully operated; and that the cause of
the respondent's injury was the negligent manner in which
he performed his work.

In this court the appellant objects to the ruling of the
trial court permitting the respondent to introduce evidence,
over its objection, as to acts of negligence not specifically
set forth in the complaint. But we think the appellant is not
now in a position to successfully urge the objection. Had
the court sustained the objection, and were the case here on
an appeal by the other side, we would say unhesitatingly
that no error had been committed. But a different rule ob-
tains when the trial court treats a defective complaint as
sufficient and permits each side to fully present his evidence
upon the real issue in the case. In such instances, this court
is enjoined by statute to hear such causes upon their merits,
disregard all technicalities, and to consider all amendments
which could have been made as made. Rem. & Bal. Code,
§ 1752 (P. C. 81 § 1255). True, if it appears that the
complaining party has been surprised or misled by the want
of sufficient allegations in the pleadings, and has thereby
been prevented from fully presenting his case to the jury,
the error is fatal to the verdict, but nothing of this sort ap-
pears in the present record.

It is next contended that the respondent was guilty of
contributory negligence. It is claimed that, in manipulat-
ing the line to loosen the block from its hold onto the hatch
combing, he should have taken hold of that part of the line
which pulled away from the block instead of taking hold of
both sides of the line. But whether the block could have
been loosened in that manner does not appear by the record,
and the respondent testified that he handled it in the manner
he had been directed so to do. Furthermore, we think if
nothing appeared more than the act itself, it would be a

question for the jury, and not the court, to say whether it constituted contributory negligence.

In its instruction to the jury, the court stated generally the allegations of pleadings, and told the jury that, if they found that the respondent "was injured at the time and place, and in the manner alleged in the complaint, and that the injuries which he received were caused by the negligent and careless acts of the defendant, as alleged in the complaint," and had proved "these material allegations by a fair preponderance of the evidence," he was entitled to recover, but nowhere defined what specific act or acts was necessary to be proven in order to permit a finding of negligence on the part of the appellant. The appellant excepted to this instruction because too general, and we are constrained to hold the exception well founded. The complaint, it will be remembered, did not detail the specific acts upon which the respondent chiefly relied to recover; and to merely tell the jury that if they found the allegations of the complaint were proven by a preponderance of the evidence the respondent could recover did not submit to them, even under the court's view of the complaint, the real issue. The instructions should have been founded upon the facts the evidence tended to prove, and the refusal of the court to so found its instructions constituted prejudicial error.

It is complained that the verdict returned is excessive; but since there must be a new trial, it is not necessary that we pass upon this question.

The judgment is reversed, and the cause remanded for a new trial.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.