[No. 19998. Department One. February 23, 1927.]

C. A. PRATT, *Respondent*, v. ARCHIE RHODES *et al.,*
*Appellants.*[1]

[1] SPECIFIC PERFORMANCE (7)—VENDOR AND PURCHASER (31)—
PERSONS ENTITLED—EXECUTORY CONTRACTS—TITLE. An executory
contract for the sale of real estate may be specifically enforced
as between the parties, notwithstanding the contract vests no
title, legal or equitable, in the vendee.

[2] VENDOR AND PURCHASER (31)—EXECUTORY CONTRACT—TITLE—
EFFECT OF PERFORMANCE. Upon full performance by the vendee
of all the terms of an executory contract for the purchase of
real estate, an equitable title is vested in him.

[3] PLEADINGS (148)—JUDGMENT ON DEFECTIVE PLEADINGS. It is
error to grant a motion for judgment on the pleadings because
the allegations are not sufficiently specific, where the defect
could be remedied by amendment.

[4] PLEADING (33)—COMPLAINT—PRAYER. Failure of the defendant
to pray for the affirmative relief warranted by his answer does
not preclude final determination of the issue at the trial.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered October 31, 1925,
upon sustaining a motion of the plaintiff for judgment
on the pleadings, in an action to quiet title. Reversed.

*H. J. Snively,* for appellants.
*Williamson & La Berge,* for respondent.

FULLERTON, J.—The respondent, Pratt, brought this
action against the appellants, Rhodes, to quiet title to
real property. To the complaint of the respondent, the
appellants answered, whereupon the respondent moved
for a judgment on the pleadings. This motion the
court granted, entering a judgment granting the relief
prayed for in the complaint.

The action was instituted on March 25, 1925. The
respondent alleged that he was the owner in fee simple

[1]Reported in 253 Pac. 640; 256 Pac. 503.

and in possession of the property in question, and that the appellants claim some right, title or interest therein, which claim is without foundation in law, and which casts a cloud upon his title. The prayer of the complaint was that the appellants be required to set forth their claims, that the claims be adjudged and decreed to be without validity, and that the respondent's title to the property be quieted. There was a prayer also for general equitable relief.

The appellants, answering the complaint, denied generally the allegations of the complaint, and set up affirmatively the following contract:

"This Agreement, made and entered into on the 2nd day of June, 1921, by and between C. A. Pratt of Tacoma, Washington, party of the first part, and A. Rhodes of Yakima, Washington, party of the second part:

"Witnesseth: That whereas, the party of the first part has purchased certain Orchard Tracts at or near the City of Yakima, Washington, together with tractor, machinery, etc., said orchard tracts being known as Lot 46 and Lot 20 of Yakima Orchard Highlands Co., Yakima County, Washington, the total purchase price of said property being the sum of $23,250, of which the party of the first part has paid or will pay the sum of one-half and the party of the second part from his share of the net profits in the operation and cultivation of said property will pay the other one-half.

"It is now therefore hereby agreed between the parties that the said party of the second part will devote all of his time and attention and to the best of his skill and endeavor will farm, till and cultivate said tracts of land in the most approved and workmanlike manner and according to the custom of farming and cultivating in that neighborhood and that the net profits from the cultivation of said tracts of land shall be divided equally between the parties hereto and from his share of the net profits the party of the second part will meet all deferred payments and interest

coming due upon the purchase price of said tracts of land, and if it should occur that he is not able to meet the same, the party of the first part shall pay the same, which money shall be returned to him with interest at 7% per annum by the party of the second part and the party of the second part shall give his note therefor and his interest in the property shall stand as security for any such advances.

"It is hereby agreed that the party of the second part shall have the right to use the tractor and tools in working for third parties, and from the proceeds of any such work he shall keep the same in a first-class mechanical condition and pay for all material and damage to the same and all of the net profits shall be divided as follows: Three-fourths to the party of the second part and one-fourth to the company consisting of the parties to this agreement.

"Neither party shall receive any salary or wages for their work in farming this property, the party of the first part shall only devote so much time to the same as he sees fit. All *extra* labor, material and expenses shall be paid equally by the parties and all profits divided equally and all losses shared equally.

"Until the property is entirely paid for the same shall stand in the name of the party of the first part. When all payments have been made and the property is clear, a corporation shall be formed and the title to the property turned over to the corporation and the stock thereof divided one-half to each of the parties to this agreement.

"If the party of the first part should die prior to the forming of such corporation and the transfer of the title to the property to the said corporation and the party of the second part should then be living, the party of the second part shall have an option of ninety days to purchase all of the interest of the party of the first part in the said property herein described for the cost price thereof, plus all taxes and expenses paid out thereon and interest at 7% per annum.

"In Witness Whereof, the parties have hereunto set their hands and seals this day and year first above written."

They further alleged:

"That in pursuance to said contract, the defendants went upon said premises and performed the same in every way for the period of three years from the time said contract was entered into, at which time the plaintiff forcibly prevented the defendant, Archie Rhodes, from devoting his time and attention to the tilling and cultivation of said tracts of land, and said plaintiff himself took charge of the farming and cultivation of the same. That the plaintiff has raised large and profitable crops upon said land and has obtained the profits from the crops grown upon said land since the beginning of said contract and has failed and neglected to account to the defendants for the same, or any part thereof, and has failed and neglected to account for the net profits arising from the cultivation of said land, or to divide the same. That the said profits were sufficient to meet all the deferred payments and the interest coming due upon the purchase price of said land according to said contract.

"That the defendants have put their labor into said premises for three years, being the first three years of said contract. That the crops raised upon said premises during said three years, as well as since said date, have all been sold by the plaintiff and he has received the money therefor, and has wholly failed and neglected to account for the same. That the defendants have at all times been ready, willing and anxious to carry out their agreement and devote all of the time of the said defendant, A. Rhodes, to the tilling and cultivation of said land as provided for in said contract and have offered so to do, but that the plaintiff has absolutely refused to permit the said defendant to do so, and he has offered time and time again and now offers to perform his part of said contract."

The prayer of the answer was that the respondent's action be dismissed, and that the appellants recover their costs and disbursements.

[1] The record does not disclose the reasons which actuated the learned trial judge in granting the mo-

tion for judgment on the complaint and answer, but it is said in the arguments of counsel that he based his conclusion on the principle announced by this court in *Ashford v. Reese*, 132 Wash. 649, 233 Pac. 29, wherein we said that an executory contract to convey real property vested "no title or interest, either legal or equitable, to the vendee" until the contract is fully performed. The respondent also relies upon the case to sustain the judgment. But we think that both the trial court and the respondent's counsel misunderstand and misapply the effect of the decision. It was not there meant that an executory contract for the sale of land vests no right in the vendee which the court will enforce at the suit of the vendee. It is not held that such a contract is a nullity. The contract, on the contrary, has all of the validity that any other executory contract has which is duly and regularly executed by parties competent to contract. Nor will the courts in every instance relegate the vendee to an action in damages where the contract is breached by the vendor. If equity, justice and good conscience require that the contract be specifically enforced, the courts will enforce it specifically. The cited case, and the cases referred to therein, do not announce a contrary doctrine. To hold that an executory contract for the sale of land does not by its mere execution vest in the vendee any title or interest in the land contracted to be conveyed, is not to hold that the vendor may deprive the vendee of the benefit of the contract by his mere whim or caprice.

[2] But it is not our view that the present record presents an instance where the vendee is without an interest in the subject matter of the contract, even taking the view of the contract adopted by the trial court. For the purposes of a motion for judgment on

the pleadings, the allegations of fact made in the answer of the appellants must be taken as true. Taking these allegations of the answer in the instant case as true, they show that the appellants were never in default on the contract; that they performed in accordance with its terms until the respondent entered and forcibly ousted them from the land; that the respondent at all times took and disposed of the crops grown upon the land, and that the net profits from the crops he received were more than sufficient to meet all of the deferred payments coming due on the purchase price of the land. The contract was thus fully performed in so far as the appellants were concerned. By the performance of the contract, the appellants acquired an equitable interest in the property, and, manifestly, the respondent was not entitled to a judgment ousting the appellants of all rights therein.

[3] It is true that the allegations of performance and payment are rather general, but the remedy for this defect is not by a motion for judgment on the pleadings. The liberal rules of practice, as well as the provisions of the statutes relating to amendments of pleadings, allow parties to amend in this respect, and the attack on the pleadings cannot be so framed as to deny the right.

[4] It is true, also, that the appellants do not pray for affirmative relief, and true that, if the case be adjudicated in accordance with their prayer, the rights of the parties will remain unadjudicated. But the prayer in the answer in no way estops the respondent. He may put in issue the allegations of the answer, require a trial of the issues, and have a determination and final adjudication of the respective rights of the parties to the property.

The judgment is reversed, and the cause is remanded with instructions to overrule the motion for judgment

on the pleadings and proceed further not inconsistent with this opinion.

TOLMAN, MAIN, and MITCHELL, JJ., concur.

## ON REHEARING.

[*En Banc.* June 7, 1927.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the opinion heretofore filed herein. The judgment is therefore reversed, and the cause is remanded with instructions to overrule the motion for judgment on the pleadings and proceed further not inconsistent with that opinion.