[No. 31073.   Department Two.   November 16, 1949.]

BLANCHE M. HENDRICKS, *Respondent,* v. ZENO B. HENDRICKS, *Appellant.*[1]

[1]Reported in 211 P. (2d) 715.

*Simmons & McCann,* for appellant.

*Miracle & Treadwell* and *Howard P. Pruzan,* for respondent.

HAMLEY, J.—Appellant, at the commencement of the trial in this divorce action, made a motion for leave to file an amended answer setting up, for the first time, a cross-complaint for a divorce. He renewed the motion at the close of the trial and, at that time, also moved that the pleadings be deemed amended to conform to the proof as a basis for determining whether appellant should be granted a divorce. All three motions were denied. The sole question before us is whether any of these rulings constitute reversible error. Respondent, who instituted the suit, was denied a divorce, but has not appealed.

The proceeding was instituted by respondent on May 26, 1948. The complaint alleges, as grounds for divorce, cruel treatment and personal indignities rendering life burdensome. Appellant's answer, verified on May 27, 1948, and served on June 9, 1948, denies the allegations as to cruelty and personal indignities, and asks that the complaint be dismissed.

The case came on for trial on March 3, 1949. At the outset, counsel for appellant served and filed an amended

answer setting up a cross-complaint for divorce on the following grounds:

"That plaintiff has been guilty of cruel treatment of this defendant in that for a long period of time she has continually mistreated and upbraided him, has nagged and embarrassed the defendant, his friends and relatives, has refused to allow him to have the freedom of his home but has insisted on having her children or in-laws in said home interfering with the family life; that by reason of the mistreatment of the defendant by the plaintiff, the defendant suffered a nervous breakdown early in 1948, necessitating his being hospitalized and directed by attending physicians to rest and recuperate; that defendant did so for a short period of time and then returned to work when he became violently ill and was again required to go to the hospital, and was later released and under instructions of the doctor sent to Eastern Washington for a rest; that because of the expense and economic strain incident to said illness and being out of employment, defendant returned to the City of Seattle only to be confronted with these proceedings, resulting in his being ordered by the doctor to leave the city and remain away until he had recovered from his physical and mental illness; that because of said treatment, defendant has lost all love and affection for the plaintiff and can no longer live with her."

In presenting the amended answer, counsel for appellant advised the court that he had an oral understanding with Mr. Butts, attorney of record for respondent, to permit the filing of the amended pleading. It was stated that this understanding had been reached on the morning of the trial, while the parties and their counsel were waiting in the conference room adjoining the court room of the presiding judge.

Mr. Butts was not present for the trial, and respondent was there represented by Mr. Miracle, as associate counsel. Mr. Miracle interposed an objection to the filing of the amended answer. He told the court that he had been associated in the case at eleven o'clock that morning and had no knowledge of any agreement between counsel for appellant and Mr. Butts. Mr. Miracle stated that this was the first

time he had seen the amended answer, that he had not read it and could not plead to it.

The objection was sustained, and the trial proceeded on the original pleadings.

At the time of the trial, respondent and appellant were forty and forty-three years of age, respectively. They married in 1940, each having been previously married and divorced, and each having had children, now of age, by their prior marriages. No children were born of the marriage between the parties. There was community property consisting of a house and furnishings, valued at about twelve thousand dollars, and a 1938 Buick automobile.

The testimony showed that the parties had frequently quarreled the past few years. On one such occasion, in March, 1947, appellant physically assaulted respondent. He testified that he "shook the daylights out of her." She testified that he had tried to kill her and that assault marks were on her body for weeks. The next day appellant instituted a divorce action. The parties were reconciled a few days later, after appellant had complied with respondent's request that he give her a quitclaim deed to the home. The first divorce action was then dismissed.

Later, respondent refused to destroy the deed and quarreling was renewed. Respondent testified that on these occasions appellant used vile and abusive language, and once remarked that it was too bad he had not done a good job on respondent at the time of the assault. Appellant testified that respondent constantly nagged and complained, that she showed little love or affection, that she refused to accept members of his family into the home, but had her own daughter by a previous marriage and the daughter's husband at the home a good deal of the time.

In February, 1948, appellant suffered an attack of stomach ulcers and a mild nervous breakdown. After some hospitalization, and at the suggestion of his doctor, he stayed with his parents in eastern Washington for nearly a month. Appellant testified that, when he returned, he could not work because of his physical condition. Respon-

dent, however, testified that appellant insisted on a destruction of the quitclaim deed and refused to work until the deed was destroyed.

Shortly thereafter, respondent brought this action for divorce. Since the action was instituted, she has obtained employment as a saleslady and has rented out a portion of the family home. Appellant is now residing in San Francisco, where he has opened up his own linen and towel supply business. Both parties testified that it would no longer be possible for them to live together in harmony.

At the conclusion of the testimony, counsel for appellant renewed his motion for leave to file the amended answer containing the cross-complaint for divorce. He also moved, in the alternative, that the pleadings be deemed amended to conform to the proof, which, he asserted, established appellant's right to a divorce.

The trial judge denied both motions. He held that the motion for leave to file amended pleadings was not timely made, stating that a period of nine months had passed since the original answer was filed, during which time King county had a department open six days in the week to consider amendments and to settle the pleadings.

The judge then reviewed the evidence. He found that little love or affection existed between the parties after their reunion in 1947; that the responsibility for this was joint and mutual; that respondent contributed to the disagreement between the parties and is therefore in no position to say that she has been wronged; and that respondent had not established grounds upon which it could be held that the continuing disagreement was the fault of appellant, especially in view of appellant's ill health. The court accordingly announced that respondent's application for divorce would be denied.

Counsel for appellant then again renewed argument on his motion that the amended pleading be received. The court adhered to its previous ruling, saying:

"It presents a new, wholly new cause of action. Counsel here was not familiar with it. He came into the case hours before this, in the case, not a long period of time. This was

an unsatisfactory determination of this matter to the Court. It should have been determined here on this evidence by a granting of a divorce in this cause. The Court has ruled by the pleadings and the evidence."

The proceeding was reopened two weeks later to receive the testimony of Mr. Butts concerning the understanding between him and Mr. Simmons regarding the filing of the amended pleading. Mr. Butts testified that, while he and Mr. Simmons, counsel for appellant, were seated about six feet apart at a table in the attorneys' conference room on the morning of the trial, Mr. Simmons displayed the amended answer. The document was not handed to Mr. Butts, and he did not read it. What then transpired, as related by Mr. Butts, was as follows:

"It was never served on me, but I knew it was a cross complaint. And he [Mr. Simmons] asked me if I had any objection to his filing it, and I said I didn't think I would have any objection to his filing it."

At the conclusion of this testimony, Mr. Simmons again renewed his motions. Mr. Miracle again objected, and again the motions were denied.

Mr. Simmons then asked for a continuance so that he could present a memorandum of authorities on the question. This motion was also denied, after which the court made this comment:

"I think they both should have had a divorce, although both did not ask for it, but she did, and Mr. Miracle [Mr. Simmons] had not. . . . I think keeping these people together would be unconstitutional on the ground that it is cruel and unusual. I suggested to them that they do it, but they would not agree."

The first question presented is whether it was reversible error for the court to deny the motion, made at the outset of the trial, for leave to file the amended answer setting up a cross-complaint for divorce.

The ground stated in support of the motion was that Mr. Butts, counsel of record for respondent, had agreed that morning to permit the filing of the amended answer. The purported agreement was admittedly an oral one, not made

in open court. It was not made in the presence of respondent, nor in the presence of Mr. Miracle, the associate counsel who represented respondent at the trial. When the motion was made, Mr. Miracle advised the court that he knew of no such agreement; that he had not been served with the amended pleading; that he had not read the amended pleading and could not plead to it.

Counsel for appellant made no effort, at this stage of the trial, to call Mr. Butts as a witness or in any other manner verify the agreement between counsel upon which he relied. The testimony of Mr. Butts, when finally produced at the reopened hearing, after the evidence was all in and the court's decision announced, falls considerably short of establishing a clear-cut understanding or agreement to permit the filing. Mr. Butts' testimony was that, without seeing or reading the amended answer, "I said I didn't think I would have any objection to his filing it."

Rem. Rev. Stat., § 130 [P.P.C. § 273-49], provides:

"An Attorney and counselor has authority,—

"1. To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered upon the minutes of the court; but the court *shall disregard* all agreements and stipulations in relation to the conduct of or any of the proceedings in an action or special proceeding, unless such agreement or stipulation be made in open court, or in the presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney; . . ." (Italics ours.)

In view of the plain provisions of the statute, it appears that the appellant was not entitled to have his motion for leave to file the amended pleading granted as a matter of right, because of any purported agreement between Mr. Simmons and Mr. Butts. Whatever understanding these two counsel had was not in such form as to become a binding stipulation. The court, in passing on this motion, was accordingly justified in disregarding any such understanding.

This construction of the statute is fully supported by our decision in *Eisenberg v. Nichols*, 57 Wash. 560, 564, 107 Pac.

371. In that case, the plaintiff lost the right to execute upon a judgment against the defendant through the running of the statute of limitations as a result of the reliance of the attorney for the plaintiff upon the "street" agreement of the defendant's former attorney. The plaintiff argued that he had the right to rely upon that agreement. This court, in rejecting this contention, quoted the statute set out above, and said:

"Our statute has not only clearly defined the manner in which an attorney may bind his client, but has provided with equal precision that the court shall disregard all agreements and stipulations which do not conform thereto. The stipulation not having been made as the statute directs, it placed no obligation on the respondent."

We next have to consider whether the trial court should have granted this motion made at the outset of the trial, not because of any binding effect of the purported agreement, but in view of all of the circumstances and in the exercise of discretion.

A period of almost nine months had elapsed between the serving of the original answer and the date of the trial. Appellant failed, during all of this period, to serve and file his amended pleading. Several hours before the trial, one of respondent's counsel learned, for the first time, that an amended answer would be filed. But the amended pleading was not served upon him or upon his associate who represented respondent at the trial. The amended answer introduced an entirely new cause of action.

These were the facts which the court had before it when it was called upon to make its initial ruling. The court had no information regarding the merits of the controversy other than as set forth in respondent's complaint, which was controverted by the original answer. Counsel for appellant did not, at this stage of the proceeding, offer any excuse for the late filing of the amended answer, or suggest any reason why the denial of the motion would cause appellant undue hardship. The court's discretion was invoked on the ground that there had been an agreement between counsel, and on no other ground.

Rule 6, Rules of Practice, 18 Wn. (2d) 34-a, now appearing as Rem. Supp. 1945, § 308-6 [P.P.C. § 93-11], provides:

"(2) The court, upon motion, at any stage of an action, *may* order or give leave to either party to alter or amend any pleading, process, affidavit, or other document in the cause, to the end that the real matter in dispute, and all matters in the action in dispute, between the parties may be completely determined as far as possible in a single proceeding. But the order or leave *shall* be refused if it appears to the court (a) that the motion was made with intent to delay the action, or (b) that the motion was occasioned by lack of diligence on the part of the moving party and the granting of the motion would unduly delay the action or embarrass any other party, or (c) that, for any other reason, the granting of the motion would be unjust." (Italics ours.)

It will be observed that there is no mandatory requirement that the court *grant* a motion for leave to alter or amend a pleading. On the other hand, there is a mandatory requirement that such a motion be *denied* if any of the circumstances described in subparagraphs (a), (b) or (c) are found to apply. In all other cases, the court's power to grant or deny such a motion is discretionary. With respect to the exercise of such discretion, it is the established rule that the trial court's refusal to permit a trial amendment will not be overturned except for manifest abuse of discretion. *Hedrick v. Washington Nat. Ins. Co.*, 186 Wash. 263, 57 P. (2d) 1038; *Forbus v. Knight*, 24 Wn. (2d) 297, 163 P. (2d) 822.

In *Forbus v. Knight, supra*, we held that it was not error for the trial court to refuse to permit a trial amendment, at the opening of the trial, setting up an entirely new cause of action. In *Eaton v. General Compressed Air & Vacuum Mach. Co.*, 62 Wash. 373, 113 Pac. 1091, it was held that the trial court did not abuse its discretion in denying a motion, made at the outset of the trial, to amend the answer to set out a general denial, even though counsel offered to pay the costs of a continuance, where opposing counsel objected. In *Bell v. Whittle*, 183 Wash. 27, 48 P. (2d) 562, it was held that the trial court did not err in denying the

defendant's motion, made at the opening of the trial, for leave to file an answer demanding an accounting between the parties. In *Weihs v. Watson,* 32 Wn. (2d) 625, 203 P. (2d) 350, we held that where, six days before the trial, the plaintiff served notice that at the trial he would move for a trial amendment setting up an additional basis of liability, it was not error for the trial court to deny the motion.

Appellant places great reliance upon our decision in *In re Campbell,* 19 Wn. (2d) 300, 142 P. (2d) 492, in which we sustained a ruling permitting the plaintiff to file an amended complaint at the beginning of the trial. There are many similar cases in which we have refused to disturb a trial court ruling permitting trial amendments. For example, see *Cummings v. Weir,* 37 Wash. 42, 79 Pac. 487; *Bowers v. Good,* 52 Wash. 384, 100 Pac. 848; *Fritch v. King County,* 4 Wn. (2d) 87, 102 P. (2d) 249; *Franklin v. Fischer,* 34 Wn. (2d) 342, 208 P. (2d) 902.

In these cases, we have pointed out that the statutes permitting amendments to pleadings were enacted in the furtherance of substantial justice, and that amendments are properly allowed at any stage of the case, when to allow them will not operate to the prejudice of the opposing party. We have indicated that the true test is found in the answer to the question: Is the opposing party prepared to meet the new issue? We upheld the trial court's exercise of discretion in each of these last cited cases where the amended pleading was received, as we did in the other cases cited above where the trial court refused to receive the amendment.

We have rarely held it to be an abuse of discretion for the trial court to reject a trial amendment. We did so hold in *Pratt v. Rhodes,* 142 Wash. 411, 253 Pac. 640, 256 Pac. 503, and *Eastern Outfitting Co. v. Lamb,* 169 Wash. 480, 14 P. (2d) 30. In each of these cases, the trial court had entered judgment on the pleadings under special circumstances which seemed to us to call for the acceptance of amended pleadings. In *O'Malley & Co. v. Lewis,* 176 Wash. 194, 28

P. (2d) 283, we held that the court should have permitted the defendant to make a trial amendment under which he could prove a new affirmative defense. There was in that case no showing that the motion was occasioned by lack of diligence on the part of the moving party, or that the granting of the motion would have unduly delayed the action or embarrassed any other party. No case has been called to our attention in which we have held that it was an abuse of discretion for the trial court to reject a trial amendment which would have introduced into the proceeding an entirely new cause of action.

We believe that the circumstances, as revealed to the court in the instant case at the outset of the trial, clearly bring the motion under subparagraph (b) of Rem. Supp. 1945, § 308-6, subsection (2), quoted above. In so far as the court was then informed, the motion was occasioned by lack of diligence on the part of the moving party, and the granting of the motion would unduly delay the action or embarrass the other party. This being so, the trial court really had no discretion in the matter, but was bound, under the statute, to deny the motion. But even if it were thought that the motion was not necessarily subject to denial under subparagraph (b), then, in any event, under the situation as it then existed, the trial court did not abuse its discretion in denying the motion.

Having properly denied the motion for leave to file the amended answer, when presented at the outset of the trial, it was not, under the circumstances of this case, reversible error for the court to deny the same motion when renewed at the close of the trial.

By that time the court had been made aware of some possible extenuating circumstances respecting the late filing of the amended pleading. Appellant was living in San Francisco for the last few weeks prior to the trial; he had hoped for a reconciliation. These were circumstances, however, which should have been presented to the court when the motion was first made at the opening of the trial. The court was certainly entitled to accord them little consider-

ation when presented for the first time at the end of the trial after the case had proceeded and concluded on the basis of the original pleadings.

But, even if considered on their merits, the fact that appellant had been absent from the city, and the fact that he had hoped for a reconciliation, would not necessarily entitle him to a favorable ruling on his motion. Moreover, the court might justifiably question whether the hope of reconciliation could have extended to the very date of trial, in view of appellant's testimony that the parties could not again live in harmony. Whether the amended answer should be accepted was still a matter resting within the sound discretion of the trial court. We do not believe there was an abuse of that discretion.

In so ruling we are not unmindful of the remarks made by the trial judge to the effect that an unsatisfactory result was reached and that a divorce should have been granted. The court was apparently of the view that the delay and possible injustice which would have resulted if the trial amendment had been permitted, thus penalizing respondent for appellant's lack of diligence, would have been still more unsatisfactory. We are not disposed to hold otherwise.

What has been said regarding the denial of the motion for leave to file amended pleadings also disposes of the question raised regarding the court's denial of the motion to conform the pleadings to the proof as a basis for determining whether appellant should be granted a divorce. Trial courts are usually more willing to conform the pleadings to the proof than to receive formal amended pleadings at the outset or during the progress of the trial. Yet, on review, the underlying principle which we must apply is the same—the ruling of the trial court is not to be disturbed except for a manifest abuse of discretion.

Where the trial court has permitted the pleadings to be amended to conform to the proof, we have usually sustained the ruling. But, in such cases, we have several times said that we would have "unhesitatingly" sustained the trial court if it had denied the motion, thus indicating our dis-

position not to interfere with the court's exercise of discretion. See *Sjong v. Occidental Fish Co.*, 78 Wash. 4, 138 Pac. 313; *Carlson v. Druse*, 79 Wash. 542, 140 Pac. 570; *Matzger v. Arcade Bldg. & Realty Co.*, 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A, 288; *Hubbard v. Hartford Fire Ins. Co.*, 135 Wash. 558, 238 Pac. 569, 240 Pac. 565.

In denying the motion to conform the pleadings to the proof, the trial court said:

"There are many phases in which the plaintiff objected to testimony of or adduced in support of the defendant's position, and I think it is impossible for me to here and now segregate that which went in without objection and that which didn't, and out of it to try and make a cause of action."

The trial court did not abuse its discretion in denying the motion to conform the pleadings to the proof.

The judgment is affirmed.

ROBINSON, MALLERY, and HILL, JJ., concur.

SIMPSON, C. J., dissents.

