[No. 30646.  *En Banc.*  May 19, 1949.]

JOHN D. PHILLIPS, *as Administrator, Respondent,* v. GEORGE PITTS *et al., Appellants.*[1]

*Dwight N. Stevens,* for appellants.

*W. J. Daly,* for respondent.

MALLERY, J.—John Nisbet owned a forty-acre tract of land in Jefferson county which the county road divided into two parcels.  The north one was improved with his dwelling house, a barn, chicken houses, and an orchard.  Twenty years ago, Nisbet spent considerable effort and money drilling for water on this parcel, but the water he located was neither potable nor sufficient.  Twelve years ago, he was forced to dig a well into a good source of water on the

[1]Reported in 206 P. (2d) 275.

south parcel, and for the last twelve years he has pumped this water across the road to his home, outhouses and orchard.

On September 11, 1944, Nisbet and the Pitts, defendants below and appellants here, executed a written contract by which Nisbet agreed to sell, and the Pitts agreed to buy, the south parcel. The clause of the contract material to this appeal provided that, on the full payment of the purchase price, Nisbet would deliver to the Pitts a deed, subject to a right of way and easement to be retained by the seller for the operation and maintenance of the well, together with the right of ingress and egress over the Pitts' parcel to maintain and repair the well and the connected water system.

The Pitts took possession of the south parcel and constructed an independent water system. From the time the Pitts' system was established until this action arose, the two systems were used simultaneously, both drawing from the same well, but each serving its respective parcel.

After the execution of the contract, Nisbet was observed on Pitts' premises from time to time servicing his water system. Also, after the execution of the contract, Nisbet represented to a realtor, to whom he showed the north parcel, that his water supply came from the south parcel.

After January 1, 1945, Nisbet's pump failed and could not be repaired nor immediately replaced. Nisbet, with Pitts' assistance, cross-connected his water system with Pitts' so that he could enjoy the use of Pitts' pump until a new pump could be installed. Nisbet ordered a new pump and removed his old pump from the well.

When the full contract price was paid on October 25, 1945, Nisbet and Pitts called at the local abstract office, and, on Nisbet's order, the deed here sought to be reformed was prepared. Nisbet delivered this deed in performance of the written contract, but, contrary to the contract terms, the deed did not reserve to the seller the water rights upon which the parties had agreed in that writing.

After the delivery of the deed and until his death on

July 2, 1946, Nisbet continued to use water from the south parcel just as he had done before.

The new pump arrived after Nisbet's death and was delivered to respondent, the administrator, who redelivered it to a plumber and instructed him to install it. Pitts would not permit the plumber to make the installation, and when respondent inquired, Pitts asserted that he had an oral agreement with Nisbet that the reservation in the contract was to terminate on Nisbet's death. Thereupon respondent brought this action.

The trial court reformed the deed to conform to the contract, and from the order denying their motion for new trial, the Pitts have appealed.

Our question is: Did the respondent prove a case entitling him to the reformation of the deed?

█ The authorities are in substantial agreement that reformation of an instrument is properly granted where there is a variance between a contract and the writing which expresses it or a variance between the contract and the instrument which is given in performance of the contract, where there is clear, cogent, and convincing proof of the terms of the contract, and that the variance occurred through mutual mistake of the parties. *John Hancock Mut. Life Ins. Co. v. Agnew,* 1 Wn. (2d) 165, 95 P. (2d) 386; *Peterson v. Paulson,* 24 Wn. (2d) 166, 163 P. (2d) 830; *Kauffmann v. Woodard,* 24 Wn. (2d) 264, 163 P. (2d) 606; *Martin v. Momany,* 26 Wn. (2d) 379, 174 P. (2d) 305; *Kessinger v. Anderson,* 131 Wash. Dec. 133, 196 P. (2d) 289; Pomeroy's Equity Jurisprudence, Symons' (5th ed.) (1941), Vols. 3 and 4, §§ 859, 859a, 870, 870a, 1375, and 1376; McClintock on Equity (2d ed.) (1948), Hornbook Series, §§ 95, 96, and 104; 45 Am. Jur. 584, Reformation of Instruments, § 2.

Appellants contend that the record does not reveal any mutual mistake; that, on the contrary, it indicates that Mr. Nisbet intentionally ordered the deed prepared by a skilled scrivener precisely as the parties intended it to be drawn; that it was delivered with the intention of giving it effect as

it was drafted; and that appellants received precisely the deed that they expected to receive under the contract as the parties had orally modified it. Appellants also contend that, even if there be evidence of mistake, it falls short of being clear, cogent, and convincing.

The cases cited by appellants, in which reformation was sought, deal with situations where the parties intended to reduce an *oral* agreement to writing and a variance occurred between the terms of the *oral* agreement and the terms of the writing. They are not particularly helpful here. Respondent does not ask us to reform a writing to conform to an *oral* agreement. He produced the acknowledged instrument of September 11, 1944, and the warranty deed of October 23, 1945, and directs attention to the unexplained omission of the reservation of water rights essential to the value and development of the north parcel and to the fact that Nisbet continued to exercise these important rights until his death. The variance between the contract and the deed of October 23, 1945, is apparent and hence clear, cogent, and convincing.

Holdings that the variances were the result of mutual mistake and were supported by clear, cogent, and convincing evidence where the preliminary contract was reduced to a writing, are found in: *Dennis v. Northern Pac. R. Co.,* 20 Wash. 320, 55 Pac. 210; *Young v. Jones,* 72 Wash. 277, 130 Pac. 90; *Carlson v. Druse,* 79 Wash. 542, 140 Pac. 570; and *Hendrickson v. Lyons,* 121 Wash. 632, 209 Pac. 1095.

Appellants seek to avoid the inference of mutual mistake to be drawn from the established variance here, by their own declarations that the written contract was orally modified so that the reservation of water rights would terminate on Nisbet's death, and that he abandoned his water rights during his lifetime. Of the latter there is no evidence.

The clear terms of the contract, the surrounding circumstances, and the acts of the parties meet the requirement of clear, cogent, and convincing evidence of mutual mistake necessary to support a reformation of the deed.

■ Appellants' defense based on the alleged *oral* modification of the contract with the decedent is unavailable by reason of Rem. Rev. Stat., § 1211 [P.P.C. § 38-3], which excludes evidence regarding transactions with decedents.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, ROBINSON, HILL, and GRADY, JJ., concur.

SIMPSON, J. (dissenting)—I dissent. The statement of facts, aside from the reported decision of the trial court, consists of twenty-five pages. Nowhere in that statement is there any evidence to the effect that no consideration passed "to Nesbit for a relinquishment of the easement."

The rule relative to reformation of contracts is that there must have been a *MUTUAL* mistake made at the time the contract was entered into—in this case, the deed. In other words, it must be shown by clear, cogent, and convincing evidence that *BOTH PARTIES* to the contract made a mistake in drafting the deed. There is not one word of testimony which shows that either Mr. Nesbit or Mr. Pitts made any mistake when the deed was written and executed. On the contrary, the evidence, reported on page twenty-three of the statement of facts, shows that Mr. Pitts testified:

"Q. Let me ask you this, was the deed delivered to you on October 23rd 1945, was it the deed you and Mr. Nesbit agreed on? A. Yes. Q. Is this the Deed. [Interpolation by counsel.] A. Yes."

The question was asked by counsel for respondent, and in propounding that question he waived the provision of Rem. Rev. Stat., § 1211. The bar of the statute may be waived. *Carter v. Curlew Creamery Co.,* 16 Wn. (2d) 476, 134 P. (2d) 66; and, *Miller v. O'Brien,* 17 Wn. (2d) 753, 137 P. (2d) 525. By asking the question of appellant, respondent made appellant his own witness and is bound by the testimony.

The case should be decided upon the evidence which appears in the record and not upon conjecture and speculation. The majority in fact enforced the contract relative

to the sale instead of reforming a deed. As I understand the decision, all deeds hereafter executed must conform to any and all provisions of a contract for a deed, regardless of the evidence produced.

SCHWELLENBACH, J., concurs with SIMPSON, J.